UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SALAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLARK E. DUCART, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-05608-JST<br><br>**ORDER OF SERVICE** |

# INTRODUCTION

Plaintiff, an inmate at Kern Valley State Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, regarding events that took place at Pelican Bay State Prison ("PBSP") where he was previously housed. His complaint is now before the Court for review under 28 U.S.C. § 1915A. His request for leave to proceed *in forma pauperis* will be granted in a separate order.

# ANALYSIS

## A.　Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity, or from an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b) (1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.  Complaint**

Plaintiff has named as defendants PBSP Warden Clark Ducart, PBSP Community Resource Manager ("CRM") Losacco, and the former PBSP Jewish chaplain Jonathan Kriendler.

Plaintiff converted to Judaism in 2012.

On June 9, 2014, Plaintiff filed a grievance alleging that PSBP staff had discriminated against Jewish inmates when they ignored his request to hold a religious meal ceremony to commemorate Passover but allowed Muslim, Protestant, and Catholic inmates to hold religious meal events. This appeal was granted in full in that prisoners were allowed to hold religious meal ceremonies without discrimination or delay. ECF No. 1 at 9–10.

On February 24, 2016, during a Jewish service, Defendant Kreindler informed Plaintiff and the other Jewish inmates that his purpose was to discourage the inmates from the Jewish religion. Defendant Kreindler further informed Plaintiff that he did not consider any of the prisoners to be Jewish because they did not have Jewish mothers; that he (Defendant Kreindler) is racist; and that it is part of Judaism to separate gentiles (non-Jews) from Jews and Jewish practices. ECF No. 1 at 8–9.

On March 1, 2016, Defendant Kriendler denied two requests made by Plaintiff for religious meal events to celebrate Passover and Shavuot. ECF No. 1 at 10. Defendant Losacco

did not respond to Plaintiff's request for a supervisor-level review of Defendant Kriendler's denial. Plaintiff filed a grievance, but was unable to hold a religious meal ceremony. ECF No. 1 at 10.

On or around January 31, 2017, Defendant Kriendler tried to remove Plaintiff from the Jewish Kosher diet program based on the false pretext that Plaintiff was unable to have two eating utensils and that Plaintiff did not fast on January 8, 2017 to observe the Asara B'Teves holiday. ECF No. 1 at 10.

On February 12, 2017, while attending Jewish services, Plaintiff was informed by Defendant Kriendler that the Kosher meals were not being prepared in accordance with Jewish dietary rules in that the meals were being cooked in the same ovens as non-kosher meals. Plaintiff informed CRM Losacco and Warden Ducart about, and filed a grievance regarding, this issue, but no action was taken to ensure that the meals served as part of the Kosher diet program met Jewish Kosher standards. ECF No. 1 at 10–11.

On March 26, 2017, Plaintiff asked Defendant Kriendler to authorize a Seder meal during Passover for him so that he could observe the high holiday. Defendant Kriendler denied the request, stating that he could not help someone whom he did not believe to be Jewish and that if Plaintiff persisted in such requests, he might face reprisals. Plaintiff informed CRM Losacco of Defendant Kriendler's comments. There was no response from CRM Losacco, but Defendant Kriendler responded that it was an outright lie and that he could not provide a goy (a Jewish convert born of a non-Jewish woman) with a Seder meal.

On April 30, 2017, Plaintiff submitted a request to Warden Ducart that Jewish prisoners in PBSP A Yard be allowed to hold a religious meal ceremony to commemorate Shavuot. Warden Ducart ignored this request, and Defendant Kriendler responded that Plaintiff did not have the required chaplain approval for this request. ECF No. 1 at 12.

That same day, Plaintiff sent a request for supervisor review to CRM Losacco regarding Defendant Kriendler's various misconducts, with a copy also sent to Warden Ducart. Neither CRM Losacco nor Warden Ducart provided a timely response. On May 16, 2017, Plaintiff submitted another request for supervisor review to CRM Losacco concerning the religious meal

ceremony, and again informed CRM Losacco that Defendant Kriendler was racist and actively discouraging Jewish prisoners of certain races from practicing Judaism. CRM Losacco did not respond. On May 16, 2017, Plaintiff submitted a grievance against Defendant Kriendler for his racially biased denials of Plaintiff's religious accommodation requests.

On December 7, 2017, Defendant Kreindler filed a "whistleblower/discrimination/ retaliation lawsuit" against Defendants Warden Ducart and CRM Losacco that alleged that he had been hired for the express purpose of reducing the number of Kosher meals served to PBSP inmates; that he was pressured to find excuses to refuse prisoners' religious accommodations such as by citing inmates for minor lapses in Jewish practices; and that PBSP's kitchen was not complying with kosher dictates. ECF No. 1 at 9.

## C. Legal Claims

In Plaintiff's first cause of action, he alleges that Defendants violated his First Amendment right to exercise his religious beliefs when they were deliberately indifferent to his requests for religious meal ceremonies and for Seder meals. "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in activities he sincerely believes are mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Shakur*, 514 F.3d at 884–85. Plaintiff's allegation that Defendants refused his requests, made between March 2016 and April 2017, for religious meal ceremonies and for Seder meals states a cognizable First Amendment free exercise claim.

In Plaintiff's second cause of action, he alleges that Defendants violated his First Amendment right to exercise his religious beliefs, as protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[1] when they were deliberately indifferent to his requests

---

[1] Plaintiff's claim that Defendants violated his rights under the Religious Freedom Restoration Act when they ignored his requests that his kosher meals be prepared in a kosher kitchen is not cognizable because the Supreme Court has declared the RFRA unconstitutional with respect to city and state governments. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).

4

that he be served Kosher meals prepared in a Kosher kitchen. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Plaintiff's allegation that Defendants refused his requests, made between February 2017 and May 2017, that his kosher meals be prepared in a kosher kitchen states both a cognizable First Amendment free exercise claim and a cognizable RLUIPA claim.

In Plaintiff's third cause of action, he alleges Defendants violated his rights under the Equal Protection Clause when they (1) refused to allow him to hold religious meal ceremonies and (2) refused to address his complaints that the PBSP kitchen was not preparing Seder meals in accordance with Jewish dietary rules, on the grounds that he was not Jewish because he was born of a Mexican woman, and not a Jewish woman. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). An Equal Protection claim can be stated in one of two ways. First, a plaintiff can allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)). Alternatively, if the claims do not involve a suspect classification, a plaintiff can establish an equal protection "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004). Plaintiff has failed to state a cognizable equal protection claim against Defendants. According to the complaint, although Defendant Kriendler admitted to being racist,

5

Defendant Kriendler's reason for refusing Plaintiff's request for religious accommodations was because Plaintiff was not born of a Jewish woman. Jewish inmates born of non-Jewish mothers are not a protected class. Plaintiff's equal protection claim is DISMISSED with prejudice because amendment would be futile. *See James v. Giles*, 221 F.3d 1074, 1077 (2000). However, the allegations in the third cause of action state a cognizable First Amendment free exercise claim. In stating a free exercise claim, the question is whether the inmate's religious belief is sincere. *See Shakur*, 514 F.3d at 884. Here, Plaintiff has alleged that he sincerely believes himself to be Jewish; that Defendants' refusal to allow him to hold religious meal ceremonies and to address his concerns about the PBSP kitchen burdened his religious practice; and that the justification (that Plaintiff is not Jewish), is not reasonably related to legitimate penological interests. *See id.* at 884–85. These claims have already been found cognizable in the first and second causes of action.

Plaintiff seeks a declaratory judgment, an injunctive order, compensatory and punitive damages, reasonable attorney's fees, cost of suit, and such further relief as the Court deems proper. ECF No. 1 at 17. Plaintiff's claim for injunctive relief is DISMISSED as moot because he is no longer housed at PBSP. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (inmate's transfer from one prison to another while his claims are pending generally will moot any claims for injunctive relief concerning first prison's policies). The Court also DISMISSES with prejudice Plaintiff's RLUIPA claim against Defendants in their individual capacity, and Plaintiff's RLUIPA claim for money damages against Defendants. RLUIPA does not authorize suits against state actors (including prison officials) acting in their individual capacities. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). RLUIPA claims may only be brought against such defendants in their official or governmental capacities. *Id.* at 904. RLUIPA also does not authorize money damages against state officials, whether sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

**CONCLUSION**

1. The Court DISMISSES the following claims with prejudice: the equal protection claim, the RLUIPA claim against Defendants in their individual capacities, and the RLUIPA claim for money damages.

2. The Court finds that the complaint has stated the following cognizable claims: Defendants' refusal of Plaintiff's requests, made between March 2016 and April 2017, for religious meal ceremonies and for Seder meals violated his First Amendment right to free exercise of religion; and Defendants' refusal of Plaintiff's requests, made between February 2017 and May 2017, that his kosher meals be prepared in a kosher kitchen violated his First Amendment right to free exercise of religion and his rights under RLUIPA.

3. The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint with all attachments thereto, and a copy of this order upon defendants **PBSP Warden Clark Ducart, PBSP Community Resource Manager ("CRM") Losacco, and the former PBSP Jewish chaplain Jonathan Kriendler** at **Pelican Bay State Prison**.

A courtesy copy of the complaint with attachments and this order shall also be mailed to the California Attorney General's Office.

4. In order to expedite the resolution of this case, the Court orders as follows:

   a. No later than 91 days from the date this Order is filed, defendants must file and serve a motion for summary judgment or other dispositive motion, or a motion to stay as indicated above. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies similarly must be accompanied by a *Wyatt* notice. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon defendants no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

        c.      Defendants shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

    5.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by defendants in their motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

(The *Rand* and *Wyatt* notices above do not excuse defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 939).

    6.      All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel. The Court may disregard

8

any document which a party files but fails to send a copy of to his opponent. Until a defendants' counsel has been designated, plaintiff may mail a true copy of the document directly to defendants, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

10. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: November 26, 2018



JON S. TIGAR
United States District Judge